IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAIRA GUZMAN, | ) |
| | ) |
| Plaintiff, | ) No. 05 C 6617 |
| | ) |
| vs. | ) |
| | ) Judge Blanche M. Manning |
| CITY OF CHICAGO, a | ) |
| Municipal Corporation; and | ) Magistrate Judge Jeffrey Cole |
| Chicago Police Officers | ) |
| MARVIN BONNSTETTER, Star 1645; | ) |
| VINCENT JAMISON, Star 9727; | ) |
| MATTHEW LITTLE, Star 2920; | ) |
| STEVEN LUGO, Star 10975; | ) |
| MICHAEL MAGNO, Star 15447; | ) |
| VIDAS NEMICKAS, Star 19220; | ) |
| DANILO ROJAS, Star 18704; | ) |
| GEORGE KUZMANOVSKI, Star 7271; | ) |
| ANTHONY CEJA, Star 672; | ) |
| ROBERT RUBIO, Star; | ) |
| MARCO ACEVEDO, Star; | ) |
| and UNKNOWN CHICAGO POLICE | ) |
| OFFICERS John Does and | ) |
| Jane Roes 1-10; | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The complaint charges the City of Chicago and the defendant police officers in their personal and professional capacities, under 42 U.S.C. § 1983, with having illegally entered and searched Ms. Guzman's 2nd floor apartment at 1536 West Walton Street on June 11, 2005. Plaintiff contends that the defendants knowingly or recklessly used false information from a confidential informant to obtain and execute the search warrant of her residence, and failed to take reasonable steps to verify the information. The plaintiff has moved to compel the defendants to reveal the identity of the

confidential informant whose information provided probable cause for the police officers' search warrant of the plaintiff's residence. Ms. Guzman claims that the discovery is necessary because there is reason to doubt the informant's *reliability*. There is no contention that the informant does not exist. The defendants' objection to the requested discovery is based on the confidential informer's privilege. For the following reasons, I find that the plaintiff has failed to meet her burden of demonstrating that the privilege ought to be set aside.

## I.
## BACKGROUND

### A.
### The Search Warrant

On June 13, 2005, defendant Sergeant Marvin Bonnstetter ("Bonnstetter") prepared a complaint for a search warrant to search "A MALE WHITE HISPANIC, NAMED RUBEN J ESTRADA DOB 22 FEB 1978, IR; 1194275; HT 5-6 WT 150" at the premises of "1536 W WALTON, CHICAGO COOK COUNTY ILL. A SINGLE FAMILY RESIDENCE" and seize a "HANDGUN AND ANY PROOF OF RESIDENCY BEING MAIL KEYS, OR ITEMS THAT SHOWS PROOF OF RESIDENCY OR CONTROL OF THIS HOUSE" which constitute evidence of the offense of "U.U.W. BY FELON." (*Defendants' Joint Response*, Ex. A)(capitals in original). The affidavit for the warrant stated that the information in the complaint was based on a June 10, 2005 conversation that Bonnstetter and F.B.I. Agent James McDonald had with confidential informant John Doe ("Doe"). According to the affidavit, Doe told Bonnstetter that on June 9, 2005, he, Doe, had met with Ruben Estrada ("Estrada") at 1536 W. Walton. Doe said that Estrada entered the building, which he described as a single family home, through the ground level and returned from upstairs with a pistol that he showed Doe.

2

Doe accompanied Agent MacDonald to the building at 1536 W. Walton, where he confirmed to the agent that it was Estrada's residence. (*Defendants' Joint Response*, Ex. A). Bonnstetter ran the address through the system and it came back under Estrada's name. He showed Doe a picture of Estrada, and Doe indicated that that was who had shown him the gun. This was the first information Doe had ever given about any criminal activity, although he had correctly identified a number of gang members from photo displays. Bonnstetter and the confidential informant went before the judge to get the warrant signed on June 13, 2005. Doe actually signed the Complaint for Search Warrant. See *Defendants' Joint Response*, Ex. A (Complaint for Search Warrant); Ex. B (Deposition of Marvin Bonnstetter at 57-58).

## B.
## The Search Of Plaintiff's Home

On June 14, 2005, at approximately 11a.m., defendants executed the search warrant at issue at 1536 W. Walton. The plaintiff alleges that the Chicago police officers kicked in her front door and more than ten of them entered her apartment. (*First Amended Complaint*, ¶¶ 38, 41).[1] The plaintiff, then seven-and-a-half months pregnant, was home alone. (*Id.*, ¶ 39-40). Some of the officers had their guns drawn. (*Id.*, ¶ 43). The defendants then began to "search and ravage the living area, closet, and other rooms." (*Id.*, ¶ 45). A police officer grabbed Ms. Guzman's arm and ordered her to the ground. (*Id.*, ¶¶ 46-47). He then forced her to remain on the ground with his knee pressing into her abdomen for 10-15 minutes. (*Id.*, ¶¶ 49-50). At some point, apparently while the plaintiff was still pressed to the floor, the defendant officer shower her a piece of paper he explained was a search warrant. (*Defendants' Joint Response*, Ex. C, Guzman Dep., at 90). The defendant

---

[1] Although the pleading is actually the plaintiff's second amended complaint, it is captioned "First Amended Complaint." (Dkt. # 38).

3

officers would not let her husband into the apartment when he arrived home. (*First Amended Complaint*, ¶¶ 52-53). The intrusion lasted for about an hour, during which the plaintiff was not allowed to leave. (*Id.*, ¶ 55). According to the plaintiff, the police found no weapons, narcotics, or evidence of any illegal activity. (*Id.*, ¶ 54).

The defendant officers admit that plaintiff was alone and pregnant when ten of them entered her apartment. (*Defendants' Answer*, ¶¶ 39-41). They admit that they used force to gain entry, that some of them had their guns drawn, and that plaintiff was held in her home for about an hour. (*Id.*, at ¶¶ 38, 42, 43, 51, 55). They deny most of the other disturbing details, but conceded that they failed to find any evidence of criminal activity within the building. (*Id.*, ¶ 54). They claim, however, that "they did find a gun outside of the building . . . ." (*Id.*).

## C.
## The Confidential Informant

Bonnstetter happened upon John Doe accidentally, approximately six months before the search of plaintiff's home, on June 9, 2005. Doe was incarcerated at that time, and Bonnstetter was visiting another inmate at Cook County Jail. (*Defendants' Joint Response*, Ex. B, Bonnstetter Deposition., at 12). Doe approached Bonnstetter, and told him that he wanted to work for him. Bonnstetter told Doe to call him when he got out of jail. (*Id.*, at 12, 16). Sometime in early June of 2005, Doe called Bonnstetter at the 14th District Station and set up a meeting. (*Id.*, at 19). They met for several hours on June 10, 2005, along with Agent McDonald, at the 14th District. (*Id.*).

During the meeting, Doe gave Bonnstetter information about Chicago street gangs. (*Id.*, at 20-23). Doe would mention a name, and Bonnstetter would "pull up a picture" and ask Doe to identify the person in the picture. Doe identified approximately 10-20 gang members in about an

4

hour. (*Id.*, at 24). Bonnstetter claims that Doe confirmed some information that he, Bonnstetter, already knew, and based on that, he believed Doe to be reliable. (*Id.*).

From there, Bonnstetter began questioning Doe as to whether he knew anyone who might be holding weapons at that time. (*Id.*, at 25). Doe mentioned that he had recently been in contact with a man named Ruben Estrada, an active gang member who he said had a "pistol," as well as another individual. (*Id.*, at 31, 53). Doe claimed that on June 9, 2005, Estrada showed Doe a gun at 1536 West Walton. (*Id.*, at 56). As Bonnstetter put it in his application for the search warrant, Doe stated that Estrada told him he was keeping the gun for protection, because "ESTRADA'S GANG THE GENTS WAS AT WAR WITH THE SATIN [sic] DISCIPLES." (*Defendants' Joint Response*, Ex. A).[2] Estrada then "ENTERED THE RESIDENCE THRU THE GROUND LEVEL DOOR AND RETURNED FROM THE UPSTAIRS WITH A PISTOL. . . ." (*Id.*).

Agent McDonald then took Doe to 1536 W. Walton to confirm that that was the building where Doe had the conversations with Estrada. Doe positively identified the "blue house." (Bonnstetter Deposition., at 63-64). When Agent McDonald returned, he told Bonnstetter that it was a blue house with a plaque for a real estate business in the first floor window. *Id.* Bonnstetter then ran the Walton Street address through the "Clear System" on his computer and came up with Estrada's name. (Exhibit A, Complaint for Search Warrant). Finally, he showed Doe a picture of Estrada, whom Doe positively identified. (*Id.*).

As it happens, two months before the warrant in question issued, Estrada was arrested by the Chicago Police and charged with illegal possession of a weapon. Chicago Police records from that arrest indicate that Estrada's address at that time was 2943 N. Ridgeway, Chicago. Estrada also listed

---

[2] Presumably, the reference was to the Satan's Disciples street gang.

this as his address during his nine previous arrests. (*First Amended Complaint*, Ex.3). Estrada's Chicago Police Department criminal history indicates that in 10 arrests between April 12, 1997, and May 20, 2001, Estrada listed his address as 1536 West Walton Street. In 9 arrests since May 20, 2001 according to the same Chicago police records, Estrada listed his address as 2943 North Ridgeway, except for one arrest on November 30, 2002, when he listed his address as 1515 West Cortez in Chicago. (*Id.*) Yet, in his deposition testimony and warrant application, Bonnstetter indicated that he had accessed Estrada's Chicago Police Department criminal history to learn he was a convicted felon prior to applying for the warrant. (Bonnstetter Dep., at 66; Exhibit A).

In addition, when the warrant was served, it might have become apparent that the building at 1536 W. Walton was not a single family residence as John Doe – and the warrant application – had described it, but a building with a real estate office on the ground floor, an apartment in the back, and the apartment in question on the top floor. (*First Amended Complaint*, ¶¶ 18-20; *Plaintiff's Reply*, Ex. 2). Bonnstetter testified that he recalled there being a real estate sign in the window, two front doors, a side door, and an upstairs. (Bonnstetter Deposition., at 37, 64-65). Despite the building's appearance, Bonnstetter thought it could still be a single family residence, perhaps with someone operating a business out of their home. (Bonnstetter Deposition. at 37-39). But he allowed that it was apparent that Doe's description of Estrada entering through the first floor and coming out the second floor was inaccurate. (Bonnstetter Deposition., at 35-36).

At his deposition, Bonnstetter testified that following the execution of the search warrant, he had a conversation with Doe and told him he was "upset" that "the information he gave me wasn't right...." (Deposition. at 59-60).

# II.
# ANALYSIS

## A.
## The Confidential Informant Privilege

The government has a limited privilege to withhold the identity of a confidential informant. *Roviaro v. United States*, 353 U.S. 53, 60 (1957); *United States v. Jefferson*, 252 F.3d 937, 940 (7th Cir. 2001).[3] As the Supreme Court has recognized, citizens have an obligation to communicate their knowledge of the commission of crimes to law enforcement officials. *Roviaro*, 353 U.S. at 59. But "not many people want to become police informants in light of the violence within" the gang and drug subculture. *Jefferson*, 252 F.3d at 942 (*quoting United States v. Bender*, 5 F.3d 267, 270 (7th Cir.1993)). By preserving anonymity, the informant's privilege is designed to encourage citizens to perform their important societal obligations. *Roviaro*, 353 U.S. at 59.

---

[3] Defendants argue that, before the court can examine the issues surrounding the informant's privilege, the plaintiff must meet an initial burden of establishing that the warrant affidavit should be pierced under *Franks v. Delaware*, 438 U.S. 154 (1978). That would require the plaintiff to make a substantial preliminary showing that Bonnstetter made false statements in the warrant affidavit in knowing or reckless disregard of the truth. *Franks*, 438 U.S. at 155-56; *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006). While *Perlman v. City of Chicago*, 801 F.2d 262, 265 (7th Cir. 1986) did find *Franks* applicable to civil cases, it was in the summary judgment context. That is to say, the determination of whether the affiant made false statements knowingly or recklessly was intertwined with the determination of whether the warrant was supported by probable cause. *Harris*, 464 F.3d at 738. It is a dispositive issue and, accordingly, the *Franks* determination is beyond the scope of Judge Manning's referral. (Dkt. # 16, Feb. 8, 2006). Beyond that, however, it is not entirely clear that the *Franks* inquiry must be satisfied prior to the examination of an assertion of the informant's privilege. Only two cases apply the *Franks* requirement in the context of an informant's privilege inquiry – *Krauser v. Scalise*, 1989 WL 158006, *2 (N.D.Ill. Declaration. 21, 1989) and *Slaven v. City of Chicago*, 1999 WL 160313, *3 (N.D.Ill. Mar. 17, 1999) – while cases moving directly to an assessment of the privilege without discussion of *Franks* are legion. *United States v. Jefferson*, 252 F.3d 937, 941-942 (7th Cir. 2001); *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994); *United States v. Bender*, 5 F.3d 267, 269 (7th Cir. 1993); *United States v. Spears*, 965 F.2d 262, 273 (7th Cir. 1992); *United States v. Gary*, 2007 WL 257639, *4 (N.D.Ill. Jan. 25, 2007); *United States v. Mikhail*, 2006 WL 3827323, *5 (N.D.Ill. Declaration. 27, 2006)(Manning, J.); *Manning v. Buchan*, 357 F.Supp.2d 1036, 1048 (N.D.Ill. 2004); *Johnson v. Perry*, 1987 WL 5683, *2 (N.D.Ill. Jan. 21, 1987).

The government is granted this limited privilege as a right, and need not make any threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege. *Dole v. Local 1942, IBEW*, 870 F.2d 368, 372 (7th Cir.1989); *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994). To overcome the privilege, the party seeking disclosure has the burden of demonstrating a need for the identity of the informant that outweighs the public's interest in effective law enforcement. *Valles*, 41 F.3d at 358; *Bender*, 5 F.3d at 270. Thus, the privilege "will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful." *Dole v. Local 1942, Intern. Broth. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 373 (7th Cir. 1989). Instead, the discovery proponent must show that the identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice. *Roviaro*, 353 U.S. at 60-61; *Dole*, 870 F.2d at 372-73.

The privilege is applicable in civil as well as criminal cases. *Dole*, 870 F.2d at 372. The Seventh Circuit has indicated that, in civil cases the privilege, which limits the right of disclosure usually called for by the Federal Rules of Civil Procedure, is arguably greater, given the constitutional guarantees which inure to criminal defendants. *Id.* At the same time, the court has noted that "[i]t would seem impossible to conclude absolutely that every criminal misdemeanor case is 'more significant' than civil actions to redress, for example, egregious violations of an individual's rights." *Hampton v. Hanrahan*, 600 F.2d 600, 637 n.40 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980). So, in a civil case, there are additional competing considerations to be weighed in the balance.

## B.
## The Plaintiff Has Failed To Make The Showing Necessary To Overturn The Privilege

Here, the plaintiff argues that disclosure of the informant's identity is "critical" to her claims because there is reason to doubt the informant's reliability as evidenced by the "false" information he provided regarding the building (i.e. that it was a single family residence) and that Estrada had shown him a gun at the building. (*Plaintiff's Motion to Compel*, at 4). Of course, the latter contention presupposes that Doe lied about Estrada. From there, the plaintiff submits that the informant's identity is "highly relevant" to her claims because it would bear on five issues:

(1) Should the defendant officers have relied on John Doe?

(2) Were they given false information that they should have corroborated?

(3) Did John Doe have a motive to provide unreliable information to the defendant officers?

(4) Was it proper to seek a search warrant based on the information they had?

(5) Was it illegal for the defendant officers to arrest plaintiff and search her apartment?

(*Id.*, at 5).

The plaintiff's brief fails to elaborate on how revelation of John Doe's identity might answer any one of these questions or provide information that she does not already have. For example, Ms. Guzman already knows that the police had never before been provided information by Doe, that after the fact they considered the information he gave them "inaccurate," that they were upset by the inaccuracy of the information, that they actually saw the building prior to the issuance of the warrant and were aware of its configuration and the sign in the front window, and that Doe was a convicted felon and thus, not inherently trustworthy. *Compare* Seventh Circuit Jury Instruction 1.15; Rule 609, Federal Rules of Evidence. She is also aware that the police searched their database prior to applying

9

for the warrant and that that database reflected an address for Estrada different than that claimed by Doe.

Whether it was proper for the police to have sought a search warrant based on the information they had, and whether it was it illegal for the officers to have arrested the plaintiff, searched her apartment, and treated her as they allegedly did have absolutely nothing to do with Doe's identity. Those are questions of law that can be answered on the basis of the information that is presently known. Adding Doe's name to the mix would do nothing to aid the analysis. In short, the questions posed by the plaintiff refute quite decisively the claim that there is any, let alone a "critical," need for disclosure of the informant's identify.

Mere speculation is never enough to overcome the privilege. *Dole*, 870 F.2d at 373. Here, there is not even a speculative argument to be made. Plaintiff's positing of issues without explanation of how they turn on John Doe's identity does not discharge her burden of demonstrating that the information is essential to a balanced measure of the issues and the fair administration of justice. *Roviaro*, 353 U.S. at 60-61; *Dole*, 870 F.2d at 372-73. What is more, the undisputed facts demonstrate an absence of any need for the information being sought, and thus, by definition, the public's interest in effective law enforcement remains predominant. *Valles*, 41 F.3d at 358; *Bender*, 5 F.3d at 270

Plaintiff seems to suggest that, based on John Doe's identity, it would be clear that he was an unreliable informer. The illogic of the argument is manifest. There is no relationship between Doe's name and his reliability. The absence of his name does not impinge in the slightest on the *plaintiff's* ability to argue that it was impermissible and illegal to have relied on Doe. Conversely, the *defendants'* argument is not strengthened in the slightest by maintaining the privilege. Although

10

that ultimate issue of the officer's right to have relied on Doe's sworn information is not before me, it is worth noting that even in a criminal case, with its constitutional requirement of proof beyond a reasonable doubt, a defendant can be deprived of his liberty (or his life) on the uncorroborated testimony of an admitted perjurer, a convicted felon, or an accomplice. *United States v. Wallace*, 32 F.3d 1171, 1173 (7th Cir.1994); *Maher v. City of Chicago*, 406 F.Supp.2d 1006, 1030 n.19 (N.D.Ill. 2006). Where the infinitely more relaxed standard of probable cause is involved, it would surely appear that the police were not precluded from relying on Doe merely because he was a "first time" informant. The permissibility of that reliance would seemingly be enhanced by the fact that Doe signed the complaint under the penalties of perjury. In any event, these are all facts that are known to Ms. Guzman. The answers to the questions she poses hinge on these facts and not in the slightest on knowledge of Doe's identity.

The cases upon which Ms. Guzman relies fail to advance her position, especially in the absence of the type of showing required of her. In *Hampton v. Hanrahan*, 600 F.2d 600, 637-39 (7th Cir.1979), *rev'd on other grounds*, 446 U.S. 754 (1980), the plaintiffs sought the identity of a confidential informant in order to question whether probable cause supported the warrant based upon the informant's information. Unlike the plaintiff here, however, the plaintiff in *Hampton* presented objective evidence which arguably called into question the very existence of the informant. The same type of situation presented itself in *Krauser v. Scalise*, 1989 WL 158006, *4-5 (N.D.Ill. Dec. 21, 1989), where the plaintiff presented evidence bringing into question the informant's existence. In both cases, the existence or non-existence of the informant was a salient factor in the determination of whether the police officer had falsified the affidavit requesting the search warrant. Whether John Doe is fictional is not an issue here.

11

In *Thames By and Through Thames v. Chicago Police Officers*, 1994 WL 55656, *3 (N.D.Ill. Feb. 23, 1994) there was the specter of an informant fabricated by police. While there was perhaps not the evidence there was in *Hampton* or *Krauser*, the plaintiff at least filed an affidavit that the court found sufficient to raise the issue of whether there was an informant at all, and whether the police had falsified the information in the affidavit in support of the warrant. Here, the plaintiff does not suggest that John Doe does not exist or that the police concocted the information in the affidavit supporting the search warrant. Instead, the plaintiff's position is that the police should have doubted John Doe's reliability having never worked with him before, and should having taken arguably easy steps to corroborate his information. Perhaps that is true. But knowledge of Doe's identity is obviously unnecessary to make the argument.

The only case cited in which the court found it appropriate to overturn the informant's privilege in the absence of evidence of a fictional informant or falsified information is *Coleman-Johnson v. Chicago Police Officers*, 1996 WL 66140 (N.D.Ill. Feb. 13, 1996). *Coleman-Johnson* relied on the *district court's* opinion in *Simmons v. City of Racine, PFC (Police and Fire Com'n)*, 37 F.3d 325, 329 (7th Cir. 1994), which "held that determination of the informants' reliability was essential because the police officers totally relied on informants' tips to establish probable cause for searching plaintiff." 1996 WL 66140, *3. The difficulty with that holding is it radiates a doctrine without avowing it. That is, if the district court was right, the informant's privilege would have to yield in virtually every case except where corroboration existed. But in that context, the informant's information would be superfluous. Beyond the palpable, analytical unsatisfactoriness of such a rule, the Seventh Circuit's decision in *Simmons* strongly disapproved of the district court's conclusion. The Court of Appeals reluctantly concluded it had no jurisdiction to consider an appeal from the

district court's order compelling discovery. 37 F.3d at 327. It emphasized, however, that it was "particularly troubled by the failure of either the magistrate judge or the district judge even to mention this concern in their orders," and that it was "exceedingly troubled by the district court's lack of interest in the safety of the informant . . . ." *Id.* at 328-329. This is not exactly an endorsement of the result or the mode of analysis by the district court, which was then uncritically relied on by *Coleman-Johnson*.

Finally, the court in *Coleman-Johnson* emphasized the absence of any attempt to corroborate any aspect of the informant's information. Here, the police corroborated all they could – one can argue about whether they did it right – and went so far as to have Doe actually sign the complaint for the warrant.

Application of informant's privilege demands a balancing test: the necessity of the informant's identity to the plaintiff's case against the public's interest in law enforcement. Here, the plaintiff has failed to demonstrate any necessity for disclosure of Doe's identity, and the balance weighs overwhelmingly in favor of maintaining the privilege. For the foregoing reasons, the plaintiff's motion to compel the defendants to reveal the identity of the confidential informant [# 55] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 4/17/07